E. P. SYMMES, *Plaintiff in Error*, v. PRAIRIE PEBBLE PHOSPHATE COMPANY, A CORPORATION, *et al.*, *Defendants in Error*.

Opinion Filed June 25, 1913.

1. In an action for a tortious injury to private rights claimed in oyster beds in the navigable waters of the State, the declaration should state that the asserted private rights do not cover any of the "existing natural or maternal oyster beds in the waters of this State."

2. A joint tort is essential to the maintenance of a joint action for damages therefor against several parties. For separate and distinct wrongs in nowise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions, and not jointly in the same action.

3. Torts that are several, separate and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences, where no concert of tortious action or consequences is intended by the parties or implied by law.

4. Where a declaration alleges that "the defendants, and each of them, in the conduct of their respective businesses along or near the shore of" a navigable river, "wrongfully and injuriously from day to day caused great quantities of mud and other refuse to be deposited and flow into said river above the point where" plaintiff's property was situated, and by reason thereof the plaintiff's property has been injured as specifically stated, such allegations do not show a joint tort by the defendants.

Writ of error to the Circuit Court of Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*Hilton S. Hampton,* for Plaintiff in error;

*P. O. Knight, E. R. Gunby, Wall & McKay, H. K. Olliphant* and *Wilson & Swearingen,* for Defendants in error.

WHITFIELD, J.—The declaration herein is as follows:
"E. P. Symmes, by his attorney, H. S. Hampton, sues Prairie Pebble Phosphate Company, a corporation; The Coronet Phosphate Company, a corporation; The Phosphate Mining Company, a corporation; The Florida Min-

ing Company, a corporation; Standard Phosphate Company, a corporation; Pierce Phosphate Company, a corporation; The Armour Fertilizer Works, a corporation, and the State Phosphate Company, a corporation, for that, whereas, heretofore, to-wit:

On the 6th, day of October, A. D. 1908, the plaintiff was granted by the County Commissioners of Hillsborough County, Florida, an exclusive right to construct an oyster bed for the propagation and cultivation of oysters in a portion of the bed of the Alafia River, described as follows:

In front of Lots two (2) and three (3), township thirty (30) South, range nineteen (19) east, from low tide-water mark and the edge of the channel extending eastward between said low tide water mark and the edge of said channel to where the west boundary line of said lot three (3) intersects the waters running south to the edge of the channel;

And the plaintiff avers that thereafter, to-wit, within the period of one year from date of said grant, he become possessed of, constructed and planted a certain oyster bar for the cultivation of oysters within the limits above described in said grant; and in accordance with the said permit he has in all respects complied with the provisions of the law in reference to the acquisition, planting and cultivation of said bed of oysters within the above described limits, and has complied with the said permit from the said County Commissioners of Hillsborough County, Florida; and for a long period of time after the granting of said permit by the said County Commissioners has utilized, used and enjoyed the usufruct from said oyster bar or bed pursuant to said permit. And plaintiff avers that thereafter the defendants, and each of them, in the conduct of their respective businesses along or near

the shore of the Alafia River above the point where the plaintiff's said property was situated, well knowing the premises, but continuing and wrongfully intending to injure and damage the plaintiff, and to interfere with his possession, occupation and enjoyment of said oyster bed, wrongfully and injuriously from day to day caused great quantities of mud and other refuse to be deposited and. flow into said Alafia River above the point where the said property of the plaintiff was situated, and still continue to wrongfully and injuriously from day to day cause to be discharged from their respective phosphate plants into said river at said points large quantities of mud and refuse; and by reason of the discharge of said mud and refuse, the regular flow of the said river has been gradually interfered with, in that the said mud and said refuse discharged as aforesaid by the defendants into said river, has diverted the flow thereof, has caused the channel of the same to become clogged at or near said point where the said oyster bed of the plaintiff is situated; and has covered and destroyed the same with said mud and refuse, as well as the oysters therein, and plaintiff has thereby and still is greatly damaged by means of the premises aforesaid, and his said property of the value of Fifteen Thousand ($15,000.00) Dollars has been destroyed.

WHEREFORE, plaintiff says that he has been injured and has sustained damages in the sum of Fifteen Thousand ($15,000.00) Dollars; therefore he brings suit claiming damages in the sum aforesaid.

(Signed)                    H. S. HAMPTON,
                        Attorney for Plaintiff."

To this declaration each of the above named defendants filed a separate demurrer, among the grounds of which are the following:

"3.  Because there is nothing in the declaration to

## VOL. 66, JUNE TERM, 1913. 31

Symmes v. Prairie Peb. Phos. Co. *et al.*—Opinion of Court.

show that the bed in question was not a natural or maternal oyster bed in the waters of this State; and for aught that appears, the plaintiff may have used a natural or maternal oyster bed for the purpose of planting and propagating his oysters thereon;

11. Because it does not appear from the declaration that there has been any common design or concert of action among the defendants to cause or produce the injury complained of, but that all of the alleged acts of the defendants have been independent ones upon their part;

12. Because this defendant cannot be held liable for the tortious conduct or acts of its co-defendant, unless such acts were produced by common design or concert of action among the defendants, and there is no allegation that there was such common design or concert of action;

13. Because no joint action, under the circumstances alleged in the declaration, can be maintained against the defendants;

14. Because it appears that the actions of the defendants were separate and independent, and, although it is alleged that they produced a result injurious to the plaintiff, they cannot be held jointly liable for the acts of each other."

The demurrer to the declaration was sustained, and the plaintiff not desiring to amend, judgment for the defendants was rendered, and the plaintiff took writ of error.

Sections 646-651, Article 3 of the General Statutes regulate the method of acquiring rights and the extent of the rights that may be acquired "to plant oysters in the public waters of this State," and Section 651 provides that "all the existing natural or maternal oyster beds in the waters of this State are exempt from the provisions of this

Article, and they remain for the free use of the citizens of this State."

On a prior writ of error in a similar action between the same parties it was stated in the opinion that "a private right to an oyster bed in the navigable waters of the State can be acquired only from the County Commissioners as the statute provides, and there is no allegation that the plaintiff so acquired a right or that he planted oysters on the allotted space within a year from the grant of the right, or that the bed claimed by the plaintiff does not cover a natural or maternal oyster bed which cannot be granted." Symmes v. Prairie Pebble Phosphate Co., 64 Fla. 480, 60 South. Rep. 223. There is no allegation in this declaration that the space in which the plaintiff claims a private right here sought to be enforced, does not cover any "existing natural or maternal oyster beds," which the statute requires shall "remain for the free use of the citizens of this State." Where a party claims a right in the public domain acquired by virtue of a statute, and such right is sought to be enforced in judicial proceedings, it should be made to appear that all the requirements of the statute have been complied with and that only such rights are claimed as are authorized by law. The declaration is defective in not alleging in some form that the oyster bed claimed by the plaintiff does not cover any of the "existing natural or maternal oyster beds in the waters of this State."

It is alleged that "the defendants, and each of them, in the conduct of their respective businesses along or near the shore of the Alafia River above the point where the plaintiff's said property was situated, well knowing the premises, but continuing and wrongfully intending to injure and damage the plaintiff, and to interfere with his possession, occupation and enjoyment of said oyster bed,

wrongfully and injuriously from day to day caused great quantities of mud and other refuse to be deposited and flow into said Alafia River above the point where the said property of the plaintiff was situated, and still continue to wrongfully and injuriously from day to day caused to be discharged from their respective phosphate plants into said river at said points large quantities of mud and refuse; and by reason of the discharge of said mud and refuse, the regular flow of the said river has been gradually interfered with, in that said mud and said refuse discharged as aforesaid by the defendants into said river, has diverted the flow thereof, has caused the channel of the same to become clogged at or near said point where said oyster bed of the plaintiff is situated; and has covered and destroyed the same with said mud and refuse, as well as the oysters therein, and plaintiff has thereby and still is greatly damaged by means of the premises aforesaid, and his said property of the value of $15,000.00 has been destroyed."

Assuming, but not deciding, that the allegations of the declaration that the defendants wrongfully caused great quantities of mud and other refuse to be deposited and flow into the river above the property claimed by plaintiff, thereby diverting the flow of the river and causing the channel thereof to become clogged at or near plaintiff's oyster bed, are sufficient connected as cause and result with the allegation of injury to the plaintiff, the question presented of joint liability and misjoinder of defendants will be considered.

A joint tort is essential to the maintenance of a joint action for damages therefor against several parties. For separate and distinct wrongs in nowise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions, and

not jointly in the same action. 15 Ency. Pl. & Pr. 562-563.

Torts that are several separate and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences, where no concert of tortious action or consequence is intended by the parties or implied by law. An implied concert of action between tort feasors may grow out of the status or relation of the parties and the conditions under which the tortious acts proximately cause an actionable injury. This declaration alleges no joint tortious act of the defendants, and no concert of action between or among them is asserted. While there may be an intermingling of the consequence of the acts complained of, no concert of action on the part of the defendants appears by express allegation or by implication of law from the language of the declaration. Each defendant may have committed the unlawful act as alleged, for which the law affords redress in separate actions for damages; but the facts and circumstances alleged in the declaration do not by implication of law show the defendants to be *joint* tort feasors in wrongfully causing great quantities of mud and other refuse to be deposited and flow into the river above the property stated to have been thereby injured. See William Tackaberry Company v. Sioux City Service Company, Iowa, 132 N. W. Rep. 945, 40 L. R. A. (N. S.) 102; Gibboney Sand Bar Co. v. Pulaski Anthracite Coal Company, 110 Va. 444, 66 S. E. Rep. 73, 24 L. R. A. (N. S.) 1185; Chipman v. Palmer, 77 N. Y. 51; 38 Cyc. 485.

The allegations of the declaration indicate that the defendants committed the acts complained of, each separately and independently of the others, and it does not appear that any of the defendants had the control or direction of the acts of any of the others or any connection therewith or responsibility therefor. Nor does it appear

that the act of each one made the acts of the others more injurious except as the union of consequences flowing from separate and independent acts added to or increased the extent or magnitude of the same character of injury.

If in fact and in law the defendants are not joint tort feasors no one of them can be held liable for any part of the injury not caused by it; and each has a right to be severally proceeded against even though the acts of each may have intermingled in the injury alleged and the damage done by each may be difficult of reasonably accurate ascertainment. The declaration does not show a joint tort by the defendants.

The judgment is affirmed.

SHACKLEFORD, C. J. AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.