**AERIAL AGRICULTURAL SERVICE OF MONTANA, Appellant,**

v.

**Wilton RICHARD, Appellee.**

**No. 17406.**

United States Court of Appeals Fifth Circuit.

March 10, 1959.

342

Edward H. Herrod, North Little Rock, Ark., for appellant.

Philip Mansour, Greenville, Miss., for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Appellant is a Montana corporation that renders service to farmers by aerial application, such as the spraying and dusting of crops, and the sowing of seeds. In the early part of 1956, appellant was engaged by appellee to seed three of appellee's rice fields by the use of an airplane. The largest field, and the only one upon which recovery was allowed in this case, consisted of 127 acres. Appellant contracted to seed said 127-acre tract of land in Bolivar County, Mississippi, with 17,500 pounds of seed rice for which appellee promised to pay $175.[1] The plane, pilot, and flagman [2] were furnished by appellant. The seed was furnished by appellee; and for a small part of the time, when one of appellant's flagmen failed to show up on the job, the appellee furnished one flagman. The preparation of the soil, its watering and fertilizing were also done by the appellee. The appellee's complaint charged

" * * * that the defendant was negligent in performing the aforesaid seeding job in that he caused same to be done with a defective spreader; that he failed to have his agents properly check said spreader before performing said work, and that as a direct result of this negli-

1. Appellee never paid for the seeding of the rice. According to the pilot's testimony: " . . . he said 'Now I'm not too well satisfied with this rice job, and I had rather not pay that until I find out what it is going to do,' and I told him that would be perfectly all right." Thereafter he did not pay.

2. The duty of a flagman is to indicate the swath to be made by the plane.

gence, the plaintiff has suffered a loss of $17,800.00."

The trial was before the court without a jury. The court found:

"Whether the seeder was defective and caused the improper distribution or not, it is very clear from the evidence now before the Court that the seeding operation was improperly done, and resulted in delivery of an uneven distribution of seed, clearly too thick on one side of the swath and clearly too thin on the other side, with some bare spots where no seed germinated."

The field was covered with an average of three inches of water when it was seeded and the uneven distribution of the seed could not be detected until the rice came to a stand, at which time it was too late to replant. Where the seed was sowed too thick the quality of rice produced was of an inferior grade. Appellee testified that the yield was less than half of the preceding year's yield and "the quality was real bad." Three neighboring farmers estimated the stand of rice on the acreage planted by airplane to be 40%, 50%, and 60%, respectively, of a normal stand. There was evidence that the weather conditions and the quality of seed were about the same in 1955 and 1956. In 1955 the 127-acre tract produced about $28,000 worth of rice, while the crop for the year 1956 grossed only about $12,000. The district court calculated the difference in the value of gross production in the two years at $15,350.41 but concluded that the damages should not be one hundred per cent of such difference,

" * * * but I also must necessarily take into account two factors that are going to be rather difficult for me to apply in determining the award to be made.

"One of those, by quick calculation, I see that the loan value per hundred weight in 1955, was approximately $4.70, while the loan value per hunderd weight in 1956,

the average was about $2.60. In addition to that there necessarily was smaller expenses of harvesting because there was a smaller gross volume of product harvested and there was a smaller expense of transportation involved because there was a smaller gross product to be transported. I will have to apply all of those factors in determining this award. It is my impression from the record that is before the Court now, that a part of the lower loan value from the 1956 crop was occasioned by the poor quality of the rice itself, and that the poor quality was occasioned by the type of growth that resulted from the uneven distribution, at least part of it was, and I must necessarily take those factors into account.

"In taking these into account I may have adopted an improper rule (sic) thumb since there is no evidence in the record as to what the normal expenses of harvesting a rice crop are, as applied to the gross value of the product harvested. It is a matter that perhaps the Court is entitled to judicially note by rather arbitrary rule of thumb. The quickest way to get at it and be fair, as I understand the circumstances and the type of operation which we are confronted with and taking into account the imponderables that always are likely to develop in the ripening and harvesting of a crop.

"The simplest way to get at it is to take all of those matters into consideration and you can do this by applying approximately a 20 per cent reduction on the calculated difference of the value of the gross product in 1955 on that tract and the gross product in 1956. According to my figures based on this, that leaves to be awarded to the plaintiff as damages $12,277.21, which is the amount the Court now finds as a fact, is due to the plaintiff by the defendant.

"The judgment will be awarded to the plaintiff in that amount of damages."

The seeder attached to the plane was two inches off center, and some of the witnesses testified that that resulted in uneven distribution of the seed, while appellant's experts testified that the off-center allowance is made to balance the torque of the plane. The district court found:

"This seeder had been tested, so far as this record shows by the distribution of only 300 pounds of oats and the effectiveness of the distribution was estimated at that time by one of the pilots who undertook the seeding operation on the plaintiff's land."

There was also evidence that the seeding of rice by airplane requires a special skill, and William Field, one of the pilots used by appellant, admitted on cross-examination that he had never before seeded rice by plane.[3]

The appellant was a foreign corporation which did business in Mississippi without qualifying. Service was had upon C. P. Cole, its former agent, purportedly under Section 5346 of the Mississippi Code of 1942. The defendant moved to quash that service. It then appeared that service had also been had[4] upon the Secretary of State of Mississippi under another statute, Section 1438 of the same Mississippi Code. As is usual, that section required the Secretary of State to mail a copy of the summons to the non-resident defendant. The following colloquy ensued:

"The Court: There was no motion directed to that motion for service on the Secretary of State?

"Mr. Herrod: We have never had any notice of that process being served, if the Court please.

"The Court: In the absence of a motion attacking in any way the process on the Secretary of State, it would not matter what disposition the Court made on your motion.

"To get the record current and up-to-date, the Court sustains your motion with respect to the agent and at the same time the Court holds in abeyance the other matter concerning this.

"Is that motion a matter of record?

"Mr. Herrod: It is in the file, your Honor.

"The Court: Call your first witness, Mr. Mansour.

"Mr. Mansour: We call Mr. Richard, the plaintiff, if it please the Court."

■ The appellant now specifies as error: "That it was an error upon the lower Court to proceed with the trial of the issues herein where he was put on notice that the proof of summons being served upon the Secretary of State was never served upon this appellant."

Actually, as appears from the quoted colloquy and as the district court noted, there was no motion attacking the service of process on the Secretary of State.

■ Acting under Rule 14, Federal Rules of Civil Procedure, the appellant moved to make C. R. Taylor, doing business as Taylor Aircraft Company, a third-party defendant, evidently because it claimed to have acquired the seed spreader used on the job from Taylor. The court denied said motion. Under Rule 14, Federal Rules of Civil Procedure, "Whether a party to an action shall

---

3. This ground of negligence was not alleged in the complaint, but may be considered under Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. reading in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they

had been raised in the pleadings." It is doubtful, however, whether the part seeded by Field was any more poorly seeded than the other parts of the field.

4. The clerk has forwarded a photostatic copy of the return of such service sworn to December 1, 1956. The motion to quash was made May 22, 1958.

be allowed to implead an additional party rests in the sound discretion of the court." 3 Moore's Federal Practice, 2d ed., Paragraph 1405, p. 414. There is no sufficient showing of an abuse of discretion.

■ The findings of fact are amply supported by the evidence and, certainly, are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. The conclusion followed from such findings that the appellant was negligent, proximately resulting in damage to the appellee.

■■ The most difficult question in the case was the assessment of damages. The appellant insists that the amount of liability was limited by contract to the cost of the individual application. Before the contract was entered into, the appellee was solicited by letter from the appellant to which was attached a leaflet headed, "Ten Reasons Why Aerial Agricultural Service, Inc., Can Give You a Better Aerial Application Service." "Reason" number 7 read as follows:

"7. *Satisfaction guarantee.* Aerial Agricultural Service, Inc., operates under the policy that the customer must be satisfied with the service received and provides that, in the event of any unsatisfactory work, the customer may ask for and receive adjustment refunds up to the amount of the cost of the individual application."

Thereafter the agreement between the parties was verbal and informal, except for a "Customer Work Order" on a printed form showing the acreage, price, etc.

"Reason" number 7, supra, does not mention negligence, nor does it purport to limit the appellant's liability for negligence. It is elementary that,

"If an express agreement exempting the defendant from liability for negligence is to be sustained, it must appear that its terms were brought home to the plaintiff, and that the express terms of the agreement apply to the particular negligence."

Prosser on Torts, 2nd ed., p. 307. This agreement does not measure up to that standard.

■■ It seems to us that the measure of damages for a negligent sowing of seed, when the circumstances are such that there can be no re-sowing or other mitigation of damages, is governed by the same principles which apply to the tortious destruction of standing crops and which are well stated in McCormick on Damages, p. 480:

"In case of damage to, or destruction of, standing crops of the kinds which are planted annually, such as wheat or cotton, the loss is measured by the difference between the value of the crops immediately before and just after the injury. In ascertaining the value, the probable yield and the amount which would have been realized for it, less the cost of cultivating, harvesting, and marketing, may be considered."[5]

We are not prepared to say that the district court adopted an improper measure of damages, nor that its findings with respect to damages are clearly erroneous.

The judgment is therefore

Affirmed.

5. See also Stigall v. Sharkey County, 1952, 213 Miss. 798, 58 So.2d 5, 6; International Agricultural Corp. v. Abercrombie, 1913, 184 Ala. 244, 63 So. 549, 552, 49 L.R.A.,N.S., 415; Parks v. Atwood Crop

Dusters, 1953, 118 Cal.App.2d 368, 257 P.2d 653, 655, 656; Wolfsen v. Hathaway, 1948, 32 Cal.App.2d 632, 198 P.2d 1, 9.