WM. G. ROE & COMPANY, Appellant,

v.

ARMOUR & COMPANY, Appellee.

ARMOUR & COMPANY, Appellant,

v.

WM. G. ROE & COMPANY, Appellee.

No. 26208.

United States Court of Appeals
Fifth Circuit.

July 15, 1969.

Rehearing Denied Aug. 25, 1969.

J. Hal Connor, Winter Haven, Fla.; J. A. McClain, Jr., Tampa, Fla., Summerlin, Connor & Threadgill, Winter Haven, Fla., McClain & Turbiville, Tampa, Fla., for Wm. G. Roe & Co.

William Reece Smith, Jr., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for Armour & Company.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

THORNBERRY, Circuit Judge:

This Florida diversity case is before this Court for the second time. The suit originated in 1963 when William G. Roe & Company (Roe) sued Armour & Company (Armour) claiming that the emission of fluorine gas from Armour's phosphate plant resulted in the decreased production of the citrus crop in Roe's nearby orange grove during the 1963–1964 season. After a non-jury trial, the district court entered its findings of fact and conclusions of law and rendered judgment for defendant Armour. The district court found that emission of fluorine gas from Armour's plant caused "periodic, variable increases" in the fluorine content in the leaves of Roe's citrus trees. The court found that the leaves had developed a chlorotic and necrotic condition, which may have resulted from "freeze damage, nutritional or mineral deficiencies, disease or fluorine" and that the loss of newly grown leaves in the spring of 1963 contributed to the decreased harvest for the

1963–1964 citrus season. The court also found that plaintiff's grove suffered "substantial damage" from the freeze of December, 1962 despite plaintiff's protective efforts, and that the decreased harvest was consistent with the freeze damage.

On the first appeal, this Court questioned the meaning of Finding of Fact No. 15, which reads:

"15. That the credible evidence in this cause is insufficient to support the conclusion that the citrus production or yield of fruit from the plaintiff's grove for the citrus year 1963–64 was materially affected or reduced by the fluorine gas emitted from the industrial stacks at the defendant's phosphate plant."

This Court was unable to determine from that finding, "when considered with the Court's other findings of fact," whether the district court intended to find that the emission of fluorine from defendant's plant was a present contributing proximate cause of the reduced citrus yield or whether the freeze was the sole cause of the injury. Accordingly, the case was remanded to the district court "for a more specific finding on this question." Wm. G. Roe & Co. v. Armour Co., 5th Cir. 1967, 370 F.2d 829, 831. The district court was instructed to assess damages for plaintiff if it determined that fluorine was a proximate cause of the reduction in yield. In that event the burden would be upon the defendant *"to prove the amount of damage caused by the vis major or* the defendant must bear the entire loss in accordance with the rule laid down in Atlantic Coast Line R. Co. v. Hendry (1933) 112 Fla. 391, 150 So. 598." *Id.*, 370 F.2d at 831. (Emphasis added).

On remand, the evidence on causation adduced at trial was reargued pursuant to the trial court's direction. No new evidence was presented. After reconsideration of the record, the district court entered amended findings of fact and conclusions of law. This time the court found: "That the fluorine gas emitted from the industrial stacks at the Defendant's phosphate plant was a present contributing proximate cause, which together with the 1962 freeze produced the reduction in yield suffered by the plaintiff for the citrus year 1963–64 in the protected area of plaintiff's groves." The court then determined the amount of plaintiff's loss caused by defendant rather than the freeze. It found that the normal yield should have been 63,900 boxes for the season and that the loss attributable to the freeze was equivalent to 50 per cent of a normal yield.[1] It found that approximately 18,800 boxes were harvested during the 1963–1964 season and that the yield loss suffered by plaintiff not attributable to freeze damage was 13,150 boxes of oranges. The court determined that the average market price for oranges for the 1963–64 season was $4.25 a box, calculated plaintiff's loss at $55,887.50, and entered judgment awarding damages to Roe in that amount.

Both parties appeal. Their contentions, in the order of discussion, are: that the district court on remand deviated from the mandate of this Court by making *new* findings on causation; that the district court erred in apportioning damages between the defendant's wrong and the freeze rather than imposing entire liability upon the defendant; that there was no demonstrable basis in the record for apportionment of damages; and that the district court improperly awarded damages to plaintiff on the basis of the market price without deducting the costs of production. We affirm.

I.

Upon the first appeal, this Court remanded the action to the district court "for a more specific finding" on the question of causation. Wm. G. Roe & Co. v. Armour & Co., *supra* 370 F.2d at

---

1. The court explicitly found that the loss attributable to the freeze was the equivalent of 50% of a *"normal yield,"* or 50% x 63,900, not 50% of the *loss*, or 50% x 45,000 (63,900 minus 18,900, the amount harvested), as Roe suggests.

831. Armour contends that the mandate of this Court restricted the district court on remand to the clarification of its *original* findings and that the court deviated from the mandate by reconsidering the record and making *new* findings on causation. Statements made by the district judge during the proceedings on remand indicate that original Finding of Fact No. 15 was, or at least was intended to be, a finding that fluorine from Armour's plant was not a proximate cause of the loss. The district court thus clarified the meaning of its original finding, but reversed itself by finding for the first time that fluorine was a proximate cause of plaintiff's loss. The issue therefore is whether the district court had the authority, consistent with the mandate of this Court, to change its prior fact findings without receiving further evidence. The doctrine of "the law of the case," treated hereafter in connection with apportionment of damages (part II, *infra*) is inapplicable here. That doctrine relates solely to "the *principles of law* the court decided on the appeal," Fountainebleau Hotel Corp. v. Crossman, 5th Cir. 1961, 286 F.2d 926, 928 (emphasis added), see generally 1B Moore, Federal Practice ¶ 0.404[1], whereas the present issue is whether the district court deviated from the mandate of this Court by reconsidering its prior fact findings and reversing them. See also, Anno., 19 A.L.R.2d 502.

■ Upon remand from an appellate court, the lower court is limited to carrying out the directions of the mandate; it "has no power of authority to deviate from the mandate," Briggs v. Pennsylvania R. Co., 1948, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, and "is without jurisdiction to vary or extend it." Britton v. Dowell, Inc., 10th Cir. 1957, 243 F.2d 434; see Bastian v. Erickson, 10th Cir. 1940, 114 F.2d 338, 341; Progress Development Corp. v. Mitchell, N.D.Ill.1963, 219 F.Supp. 156, 158. Armour argues that the case was remanded solely for clarification by the district court of the meaning of original

Finding of Fact No. 15 on causation. It was not clear whether the court intended to find that fluorine, the 1962 freeze, or both, caused plaintiff's crop reduction. Consequently, this Court could not determine whether the district court rendered its original judgment under a misapprehension of the rule of Atlantic Coast Line R. Co. v. Hendry (1933), 112 Fla. 391, 150 So. 598. By remanding for more specific findings, rather than reversing the judgment below, this Court recognized, Armour contends, that the district court erred only if it originally found fluorine to be a proximate cause of plaintiff's loss. In that event, the district court was directed to make new findings of fact as to damages and to enter judgment for plaintiff pursuant to the *Hendry* rule. If, on the other hand, the district court originally intended to find that fluorine was *not* a proximate cause of the loss, no error was committed and the judgment for defendant was proper. That, it is argued, should have ended the matter; the district court was not directed by this Court and was not otherwise free to make *new* findings on proximate cause. The court, therefore, Armour contends, deviated from the mandate and the original judgment for defendant should be reinstated.

■ We disagree. Although, as Armour argues, the district court was not *directed* to reconsider its prior findings, it was nonetheless within the court's power on remand to find that it had been wrong the first time and reverse itself. As the Second Circuit stated in a similar case:

We think that, in the facts of this case, where the trial judge had by his own admission committed error, he could, without receiving any new evidence, correct that error when the matter was remanded to him for further consideration on just that point. It is not necessary for us to decide whether he would have such a power if we had specifically dealt with that matter on appeal. But in the absence of such circumstances we think it

clear the District Court was free to correct its error.

Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp., 2d Cir. 1965, 354 F.2d 459, 463, 19 A.L. R.3d 492; cf. 6 Moore, Federal Practice ¶ 54.08[2]. Or, as a noted District Judge stated in a case following remand from the Court of Appeals:

> I do not understand that any finding not adopted by the Circuit Court of Appeals either expressly or by necessary implication as a basis for its decision is irrevocable. * * * I see no reason why the findings may not be changed or modified, if, in the light of the entire record now before me, I should conclude that they are wrong or that, as stated, they did not correctly express what I meant to say.

William Goldman Theatres, Inc. v. Loew's, Inc., E.D.Pa.1946, 69 F.Supp. 103, 104 (Kirkpatrick, J.).

A reading of the opinion rendered in the first appeal makes it plain that this Court did not intend to foreclose reconsideration of the original findings; indeed, the district court was invited to do so. This Court emphasized the possible inconsistency between the court's finding on proximate cause and its other findings which implied that fluorine caused some reduction in the yield of fruit. Armour's contention that the original findings can be reconciled does not detract from the fact that this is what this Court did on the first appeal. The language of the first opinion further obviates the notion that the court below was to be bound by its original findings on causation. The Court stated:

> [W]e remand the cause to the district court *for a* more specific *finding* on this question. If the district court *finds* that the acts of the defendant were not a present contributing proxi-

mate cause, there will be no occasion to ascertain the damages suffered by the plaintiff; but if it *is found* that the defendant's act of negligence was a present contributing proximate cause * * * the Court shall proceed to ascertain the damages to which the plaintiff may be entitled. (Emphasis added).

Wm. G. Roe & Co. v. Armour & Co., *supra* 370 F.2d at 831.

This Court thus did not rule one way or the other on the original findings, except to conclude that they were ambiguous when considered as a whole; and a large measure of discretion was necessarily vested in the district court as to the manner of carrying out the mandate. *See* Holliday v. Pacific Atlantic S.S. Co., D.Del.1953, 117 F.Supp. 729, 732. In short, "it was the intention of this court in remanding the case to leave the trial court with a free hand." Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp., *supra* 354 F.2d at 462.[2] Rippy v. Borders, 5th Cir. 1957, 250 F.2d 690, is therefore inapposite. On the first appeal in that case this Court directed the district court to enter a judgment enjoining the defendants "from *requiring* segregation of the races in any school under their supervision," Borders v. Rippy, 5th Cir. 1957, 247 F.2d 268. The district court, however, in contravention of the mandate, entered a judgment enjoining the defendants "from requiring *or permitting* segregation of the races," 250 F.2d at 692. On the second appeal, the judgment was reversed and remanded with instructions to enter judgment in accordance with the original mandate. The court below, unlike the district court in *Rippy*, has not deviated from the terms of a specific mandate, and we cannot say that the reconsidered findings are clearly erroneous. According-

---

2. "We did not rule as a matter of law that the facts found were the only facts which the evidence would support. On remand the lower court could, on reconsideration, have found the same facts and changed its holding, or it could have found different facts which were consistent with its original holding. It is the latter which occurred and there is nothing in the terms of the mandate from this court to prevent it." *Id.*

ly, Armour's objections to the amended findings on causation are without merit.

## II.

Having concluded that it was within the authority of the district court to reverse its prior findings on remand and to impose liability on the basis of its amended findings, we consider Roe's challenge to the measure of damages. Roe contends that the district court erred in apportioning damages between the defendant's wrong and the freeze rather than imposing entire liability upon the defendant. Roe argues that under Florida law where a defendant asserts the defense of an act of God, the defendant has the burden of proving that all of the damages resulted solely from the vis major or must be held accountable for the entire loss. Thus, once the district court found that Armour's conduct was a contributing proximate cause of the loss, the entire loss had to be assessed against Armour regardless of whether Armour proved the amount of damage caused by the freeze.

■ By challenging the rule of apportionment applied by the court below on remand, Roe seeks to have this Court adopt a rule contrary to that set forth on the prior appeal. In remanding this case to the district court, this Court explicitly held:

> Under Florida law, when there is a determination that two concurrent causes result in damage, one of which was an act of the defendant and one an act of God, vis major, *the burden is on the defendant to prove the amount of damage caused by the vis major or* the defendant must bear the entire loss in accordance with the rule laid down in Atlantic Coast Line R. Co. v. Hendry (1933), 112 Fla. 391, 150 So. 598. (Emphasis added).

Wm. G. Roe & Co. v. Armour & Company, 5th Cir. 1967, 370 F.2d 829, 831.[3] A federal court enunciating a rule of law to be applied in a particular case establishes the "law of the case," which "other courts owing obedience to it *must,* and which it itself will, normally apply to the same issues in subsequent proceedings in that case." 1 Moore, Federal Practice ¶ 0.404(1); Fontainebleau Hotel Corp. v. Crossman, *supra* 286 F.2d at 928. "The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States of America and Interstate Commerce Commission v. United States Smelting, Refining & Mining Co., 1950, 339 U.S. 186, 70 S.Ct. 537, 544, 94 L.Ed. 750; Fontainebleau Hotel Corp. v. Crossman, *supra*; Poster Exchange, Inc. v. National Screen Service Corp., 5th Cir. 1966, 362 F.2d 571, 574. This Court has recently held that the law of the case

> *must be followed* in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, *unless* the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or *the decision was clearly erroneous and would work a manifest injustice.* (Emphasis added)

White v. Murtha, 5th Cir. 1967, 377 F.2d 428, 431–432.

■ Nonetheless, the law of the case doctrine "is not an inexorable command," White v. Murtha, *supra*, 377 F. 2d at 431; and this Court, emphasizing that "justice is better than consistency," Seagraves v. Wallace, 5th Cir. 1934, 69 F.2d 163, 165, has recognized that it must be free to determine whether the

---

3. Roe's argument that this Court's concern on the first appeal was solely with the question of liability, rather than damages, and that it intended to adopt as the controlling rule of law the holding of Atlantic Coast Line R. Co. v. Hendry, *supra*, is squarely refuted by the above portion of the opinion. The Court addressed itself to both liability *and* damages and adopted as the controlling rule of law application of the principle of apportionment, if supported by the evidence, *"or"* the rule of *Hendry.*

first decision was in error, and if so, whether a different result should be reached. Lincoln Nat. Life Ins. Co. v. Roosth, 5th Cir. 1962, 306 F.2d 110, 111, 113 (en banc); Seagraves v. Wallace, *supra*; Commercial Nat. Bank in Shreveport v. Connolly, 5th Cir. 1949, 176 F.2d 1004, 1006 (en banc); accord, White v. Murtha, *supra*. Where, as here, a party to the action raises serious objections to the soundness of the first decision, the Court, in all but special circumstances, *e. g.*, Lincoln Nat. Life Ins. Co. v. Roosth, *supra*,[4] should reexamine the first decision as a prerequisite to its implementation as the law of the case. Roe, apparently recognizing "the laboring oar [it] pull[s], in endeavoring to have us reverse our former judgment," Atchison, T. & S. F. Ry. Co. v. Ballard, 5th Cir. 1940, 108 F.2d 768, 770, advances two arguments in an effort to demonstrate that the rule of apportionment set forth by this Court constitutes an erroneous statement of Florida law. The first is predicated upon the decision in Atlantic Coast Line R. Co. v. Hendry (1933), 112 Fla. 391, 150 So. 598. In that case, an action was brought to recover damages for the loss of the plaintiff's crop allegedly caused by defendant railway's negligent construction of a culvert along its right of way. Plaintiff's crops were flooded during heavy rains because the culvert was insufficient to handle the passage of water. The railroad denied liability on the ground that an act of God was the sole proximate cause of the loss. The court held that the defendant, in order to establish a vis major defense and thus escape liability, must show that the loss resulted solely from the act of God. On the other hand, "if the defendant's negligence is a present contributing proximate cause, which, commingled with the act of God, produces the injury, *then the defendant is liable* notwithstanding the act of God." Id. 150 So. at 598 (emphasis added). Roe argues that *Hendry* precludes the apportionment of damages between the defendant's wrong and the vis major.

We disagree. The question here relates to the portion of the total damage sustained which may properly be assigned to the defendant, as distinguished from the vis major. The *Hendry* decision, however, dealt solely with the issue of the defendant's *liability*, not the measure of damages. Inasmuch as the question of the proper measure of damages remains even after liability is established, *see* Wise v. Carter, Dist.Ct.App.1960, 119 So.2d 40, 43; Hamblen v. Owens, 1937, 127 Fla. 91, 172 So. 694, 696, *Hendry* is inapposite. No doubt, as Roe argues, the railroad in *Hendry* was held liable for the entire loss. But it is clear that the possibility of apportioning the loss between the defendant's conduct and the vis major was neither considered nor decided. We agree that the court in *Hendry* did not establish or sanction a rule of apportionment, but we cannot agree that the decision bars apportionment. The court simply did not determine that question either way: the decision is neutral as it applies to the apportionment of damages. Roe has not cited any other Florida decisions which have held that the defendant does not have an opportunity to prove the amount of damage caused by the vis major. Starling v. City of Gainesville, 1925, 90 Fla. 613,

4. In *Roosth*, this Court refused to reexamine its prior decision rendered in the same cause due to the "absence of any disagreement on controlling legal principles and the very substantial actual sameness of the two records." *Id.* at 306 F.2d 112. The Court emphasized, however, that:

"This * * * is a deliberate choice and is in no sense the product of any erroneous notion that, as a matter of sheer power, application of that doctrine [law of the case] is mandatory. This would, of course, turn our backs on the principle so often recognized by this Court that while this is a rule guiding decision in a given case, the Court is not compelled to follow its former decision. We have too often held that this Court is, and must be, free to determine whether first, the prior decision was erroneous, and second, and more important, whether the circumstances are such that a different result should be reached."
*Id.* at 306 F.2d 112–113.

106 So. 425, and Rubin v. Appel, Dist. Ct.App.1967, 194 So.2d 318, along with the common carrier cases cited by Roe, also dealt with the question of liability and are likewise inapposite.[5] Accordingly, we reject the first attack on our prior decision.

■ Roe argues secondly that the rule of apportionment set forth by this Court is contrary to the Florida doctrine of joint and several liability, whereby a wrongdoer may be held liable for the entire loss even though other causes may have contributed to it. The legal contention is that joint and several liability exists in any situation where two or more causes concur to produce harm, even when one cause is an act of God. There is little doubt that the concurrence of a human act and an act of God may in appropriate circumstances give rise to the principle of joint and several liability to the end that the wrongdoer may be held entirely liable. But Roe's interpretation of the scope of the doctrine is unduly broad; joint and several liability is not imposed under Florida law simply because two or more causes concur to produce the plaintiff's injuries. In the absence of concert of action or the breach of a joint duty by the defendants, joint and several liability will be imposed only where the resulting harm is of an indivisible nature and is not subject to rational apportionment. In Louisville & N. R. Co. v. Allen, 1914, 67 Fla. 257, 65 So. 8, L.R.A.1915C, 20, the Supreme Court of Florida, although admitting the impossibility of framing a definition of joint tortfeasors that could be universally applied, set for the following general rule:

> Where, although concert is lacking, the separate and independent acts of negligence of several combine to produce directly *a single injury*, each is responsible for the entire result, even though his act or neglect alone might not have caused it. (Emphasis added).

*Id.* 65 So. at 12. And in Feinstone v. Allison Hospital, Inc., 1932, 106 Fla. 302, 143 So. 251, 252, the court stated that joint and several liability exists in circumstances where "two or more wrongdoers negligently contribute to the personal injury of another by their several acts, *which operate concurrently, so that in effect the damages suffered are rendered inseparable.*" (Emphasis added in part).

The distinction between limiting the defendant's liability to that part of the harm which he in fact caused and imposing joint and several liability, therefore, is between injuries which are reasonably capable of division, and injuries which are not. See also W. Prosser, Torts § 42 (3d Ed. 1964). Thus in De La Concha v. Pinero, Fla.Sup.Ct.1958, 104 So.2d 25, relied upon by Roe, the court held that the plaintiff, who was injured in a collision between the car in which he was a passenger and another car, could recover his entire damages from either driver. The separate acts of the two drivers concurred to produce a single indivisible injury: no rational basis for division of the total damages existed, and consequently, either driver was liable for the entire loss. Accord,

---

5. Moreover, it appears that in at least one Florida case the defendant's liability has been limited to that part of the harm which he in fact had caused, despite the asserted intervention of a vis major as a cause of the injury. Davis v. Ivey, 1927, 93 Fla. 387, 112 So. 264, cited by the court in *Hendry*, likewise involved an action for injuries caused by the diversion of water by a railroad embankment in which the defendant interposed a vis major defense. Inasmuch as the judgment in the trial court was for the plaintiffs, the limitation imposed upon the defendant's liability by the lower court was not squarely in issue on appeal. Nonetheless, the following instruction to the jury, approved, albeit in dictum, by the appellate court, is significant:

> "(24) If you find the defendant guilty on any count of the declaration * * * *then you could only find against the defendant for the amount of damages caused by him*, and the burden is upon the plaintiffs to establish the amount of such damage by a preponderance of the evidence." (Emphasis added).

Davis v. Ivey, *supra* 112 So. at 269.

Davidow v. Seyfarth, Fla.Sup.Ct.1952, 58 So.2d 865. On the other hand, the Florida courts have held that defendants who independently pollute the same stream are liable only severally for the damages individually caused. Standard Phosphate Co. v. Lunn, 1913, 66 Fla. 220, 63 So. 429; Symmes v. Prairie Pebble Phosphate Co., 1913, 66 Fla. 27, 63 So. 1. The court in those cases held that torts consisting of separate and independent acts do not become joint "by the subsequent union or intermingling of their consequences." The court emphasized that "such union or intermingling of consequences did not cause the injury *by* intermingling or contact," Standard Phosphate Co. v. Lunn, *supra*, 63 So. at 432. (Emphasis added). Roe insists that *Lunn* and *Symmes* are inconsistent with the doctrine of joint and several liability as subsequently developed by the Florida courts. But in Louisville & N. R. Co. v. Allen, *supra*, in which the Supreme Court of Florida set forth and applied the "single injury" rule governing joint and several liability, the court explicitly stated: "Standard Phosphate Co. v. Lunn, 66 Fla. 220, 63 So. 429, cited and relied upon by the plaintiff to support his contention, does not conflict with what we have said herein, but, on the contrary, harmonizes with and tends to support the principle we have just above stated. See, also, Symmes v. Prairie Pebble Phosphate Co., 66 Fla. 27, 63 So. 1." *Id.* 65 So. at 12.

■■ Moreover, the principle of apportionment adopted by this Court on the first appeal of this action has been applied by the Florida courts to cases in which the defendant negligently injures a person suffering from a pre-existing injury. In such cases, the defendant must prove the amount of damage which is attributable to plaintiff's pre-existing injury *or* otherwise bear the entire dam-

age. Hamblen, Inc. v. Owens, 1937, 127 Fla. 91, 172 So. 694, 696; Wise v. Carter, Dist.Ct.App.1960, 119 So.2d 40, 43.[6] Roe distinguishes those cases on the ground that they did not involve a concurrence of causes, inasmuch as the aggravation to the existing injury occurred, "subsequent, not concurrent, in point of time." But the coincidence in time of separate causes giving rise to an injury is not determinative of joint and several liability. Separate causes concurring during the same time period to produce injuries subject to rational division, such as the stream pollution cases, do not give rise to joint and several liability. Standard Phosphate v. Lunn, *supra*; Symmes v. Prairie Pebble Phosphate Co., *supra*. Joint and several liability is established, however, where an act, subsequent in time, concurs with a prior cause to produce "inseparable" damages. Feinstone v. Allison Hospital, Inc., *supra*, 143 So. at 252. (Loss of leg).

■ In sum, it appears that the Florida courts impose entire liability upon a defendant only where there is no reasonable alternative. In the present controversy there is no reason why part of the crop loss suffered by Roe cannot be logically and conveniently assigned to the freeze. See W. Prosser, Torts § 47, p. 252; cf. Permanente Metals Corp. v. Pista, 9th Cir. 1946, 154 F.2d 568. The defendant's fluorine and the freeze have not produced a single indivisible injury as in De La Concha v. Pinero, *supra*. The damages would not appear to be "inseparable": a rational division of damages between the two causes—assuming an evidentiary basis to support such a finding—would seem possible. In mid-December 1962, plaintiff's grove sustained substantial damage as a result of the severe freeze. The trial court found that as a result of that damage, plaintiff's crop was reduced by 31,950

6. "The defendant must respond in damages for such part of the diseased condition as his negligence has caused and *if there can be no apportionment*, or it cannot be said that the disease would have existed apart from the injury, *then he is responsible for the diseased condition.*"
Hamblen, Inc. v. Owens, *supra*, 172 So. at 696.

boxes of oranges. Thereafter, during January, February and March of 1963, plaintiff's citrus trees put out their spring flush growth of leaves, bloomed, and set the fruit crop for the 1963–64 citrus season. The trial court found that as a result of the effect of fluorine emitted from defendant's plant on the spring flush and young fruit, plaintiff's crop was reduced by 13,150 boxes of oranges. There is no reason why the trial court, as a matter of law, should not have been free to apportion damages. The rule of the cases involving aggravation of a pre-existing injury, whereby the burden of proving the amount of damage produced by the other cause devolves upon the defendant, is apposite here, and serves to protect the plaintiff against any uncertainty encountered in ascertaining damages.

Accordingly, we conclude that the rule of apportionment set forth by this Court on the first appeal was correct. Certainly, we cannot conclude that "the decision was clearly erroneous and would work a manifest injustice." White v. Murtha, *supra*, 377 F.2d at 432.[7] The trial court applied the rule as formulated by this Court. Roe's contention is therefore without merit.

### III.

■ Roe next contends that even if the rule of apportionment applied by the lower court complies with Florida law, there was no adequate basis in the record on which the court could reasonably apportion the damages between the defendant's wrong and the freeze. This argument is not directed at the correctness of the legal standard applied by the court below, but rather at the evidentiary basis for its findings. This contention is also without merit. The find-

ings of the trial court are amply supported by the record. The Director of Citrus Research Investigation associated with the United States Department of Agriculture, in answer to a detailed hypothetical question setting forth the conditions existing in Roe's protected acreage at the time of the 1962 freeze— these included the age of the trees, the temperature range and winds, the protective devices employed, and the twig damage and defoliation in the various sections of the field—testified that a crop equalling 25 to 50 per cent of a normal yield would be consistent with the freeze damage sustained by the grove. Or, conversely, his testimony indicated that a loss equalling between 50 and 75 per cent of a normal yield could be attributed to the freeze. The evidence thus established the total crop loss for the year and the amount of damage, albeit fixed within rather broad limits, attributable to the freeze. Roe has not recited any evidence to contradict this testimony and has not otherwise demonstrated that the findings of the lower court regarding apportionment are "clearly erroneous." That is the end of the matter.

### IV.

■ Finally, we consider Armour's challenge to the measure of damages. The district court awarded damages to Roe on the basis of the average market price for oranges established during the 1963–64 season. Armour contends that the court should have deducted the probable cost of cultivating, gathering, and marketing the lost crop. It is argued that the reduced orange crop resulted in lower production costs, and that in the absence of such a deduction, the plaintiff would receive a windfall. We disa-

---

7. In connection with the "manifest injustice" standard, we note, but do not emphasize, that on the first appeal, Roe championed the very principle of apportionment that it now so vigorously attacks, stating that "the analogy between this situation and that of wrongful injury to a person already suffering from some pre-existing condition is readily apparent."

gree. Although the costs of producing and marketing a crop should be deducted where it appears that costs were reduced by the lower yield, see generally, McCormick, Damages § 126 at 480, the evidence here indicates that no substantial cost reduction occurred. The testimony establishing the market value of oranges related to oranges *on the tree*. Costs of harvesting and marketing were not saved on the ruined portion of the crop since the purchaser would do the picking and hauling. The cost of cultivation and care for the grove was approximately the same as it had been for the prior season when the grove yielded a normal harvest, although Roe testified that he did fertilize somewhat lighter after he saw the fruit and leaf drop.

The costs of production in the year of the loss thus were substantially the same as those incurred in connection with a normal crop. This Court's decision in Aerial Agricultural Service of Montana v. Richard, 5th Cir. 1959, 264 F.2d 341, relied upon by Armour, is therefore inapposite. That case involved an action for the loss of a crop caused by the defendant's negligent aerial seeding of the plaintiff's rice fields. The district court reduced the award of damages in order to account for reduced production costs. But the court specifically found that, unlike the present case, "there necessarily was [sic] smaller expenses of harvesting because there was a smaller gross volume of product harvested and there was a smaller expense of transportation involved because there was a smaller gross product to be transported." *Id.* 264 F.2d at 343.

We are not prepared to say that the district court adopted an improper measure of damages or that its findings with respect to damages are clearly erroneous.

The judgment is therefore

Affirmed.