**Larry Dean CLEMENTS, Plaintiff-Appellee Cross-Appellant,**

v.

**J.R. (Bob) STEELE, Jr., etc., et al., Defendants,**

**Circle M Well Servicing Co., Inc., Defendant-Appellant Cross-Appellee.**

No. 85–2126.

United States Court of Appeals, Fifth Circuit.

April 7, 1986.

Andy Tindel, Charles H. Clark, Tyler, Tex., for defendant-appellant cross-appellee.

Lester R. Buzbee, Houston, Tex., for plaintiff-appellee cross-appellant.

Before CLARK, Chief Judge, and DAVIS, Circuit Judge *.

* Due to his death on March 27, 1986, Judge Albert Tate, Jr. did not participate in this deci-

PER CURIAM:

The defendant, Circle M Well Servicing Co., Inc. (Circle M), challenges the judgment against it in this suit seeking compensatory and punitive damages for injuries incurred in a work-related accident. We hold that the measure of actual damages sustained by plaintiff, Larry Clements (Clements), was finally determined in a prior trial against the defendant, J.R. (Bob) Steele, Jr. (Steele). We also hold that the evidence is insufficient to support the jury's finding of gross negligence and the award of punitive damages. We vacate the judgment of $532,000 against appellant, and remand with directions for the entry of a new judgment against defendant, Circle M, in the amount of $52,743.69, as determined by the jury in the first trial.

I

Clements sued his employer, Steele, and Circle M in this diversity-based action, seeking damages for injuries he received in an accident the two defendants allegedly caused. Steele hired Circle M to unload heavy oil drilling sucker rods. Clements was injured while helping Circle M employees unload the rods. During the unloading process, an unbalanced load of rods fell on Clements' legs. His right leg was eventually amputated below the knee.

At the close of Clements' case, the trial court granted a directed verdict for Circle M and dismissed Circle M from the remainder of the trial. Clements recovered a judgment of $52,743.69 against Steele, composed of $50,000 in damages and $2,743.69 for stipulated past medical expenses.

Clements appealed the directed verdict in favor of Circle M, and Steele appealed the judgment in favor of Clements. A panel of this court affirmed the judgment against Steele, but reversed and remanded the directed verdict in favor of Circle M "for a new trial as to Circle M's liability to Clements for its employees' alleged negligence."

sion. The case is being decided by a quorum. 28 U.S.C. 46(d).

At the second trial, the jury found that Circle M was negligent and awarded Clements $665,000 compensatory damages and $100,000 punitive damages. The jury also found that Clements was twenty percent negligent in his use of the unloading equipment. The trial judge reduced Clements' award of compensatory damages by his twenty percent negligence, and entered judgment against Circle M in the amount of $632,000.

On appeal, Circle M makes three arguments: (1) the district court erred in submitting the issue of actual damages to the jury at the second trial; (2) the evidence was insufficient as a matter of law to support the jury's finding that Circle M was grossly negligent and its award of punitive damages; and (3) the trial court erred in failing to reduce the punitive damages award by Clements' twenty percent negligence.

Clements makes two arguments on cross appeal. He claims that (1) the evidence was insufficient to support the jury's finding that he was twenty percent negligent, and (2) the award of $50,000 actual damages in the first trial was inadequate as a matter of law.

## II

We first address the issue of whether the trial court properly submitted the issue of actual damages to the jury in the second trial. The mandate of an appellate court is controlling on remand. The district court must comply with that mandate, and may not disturb any issues that the appellate court affirmed or decided. The district court may determine on remand only those issues "not expressly or impliedly disposed of on appeal." *Gulf Coast Building and Supply Co. v. Local 480, International Brotherhood of Electrical Workers*, 460 F.2d 105, 107 (5th Cir.1972) (quoting *Foley v. Smith*, 437 F.2d 115, 116 (5th Cir.1971)); *see also Wm. G. Roe & Co. v. Armour & Co.*, 414 F.2d 862, 865 (5th Cir.1969) ("Upon remand from an appellate court, the lower court is limited to carrying out the directions of the mandate....")

(citing cases); 1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.404[10] at 170–74 (1984).

In *Gulf Coast Building and Supply*, the district court awarded damages, including prejudgment interest to the plaintiff. This court affirmed that judgment on appeal. The defendant did not specifically object to the award of prejudgment interest on appeal. In answer to a subsequent interpleader suit, however, the defendant claimed that the district court erred in including prejudgment interest in the prior judgment. The district court reformed the judgment to allow for interest calculated only from the date of judgment. The original plaintiff appealed from that reformation of the judgment. 460 F.2d at 107.

We noted the binding power of an appellate court's mandate on a subsequent district court proceeding. *Id.* We stated that any matters that came before the prior appellate court and which that court disposed of by decree became "finally settled and ... the law of the case." *Id.* (quoting *In re United States*, 207 F.2d 567, 570 (5th Cir.1953)). We then held that the entire judgment had been presented to the first appellate court and affirmed by that court. The award of prejudgment interest was part of the judgment, and the first appeal thus necessarily disposed of that issue. *Id.* at 108. We held that the district court lacked the power to alter the judgment after the first appeal and reversed. *Id.*

The case at bar is analogous. Clements failed to object to the measure of actual damages on the first appeal. Steele's appeal brought before this Court the entire judgment against him. That judgment included Clements' actual damages as determined by the first jury. This Court's affirmance of that judgment necessarily affirmed the amount as well as the propriety of the actual damages award. 732 F.2d 940. Furthermore, our mandate expressly returned the case to the trial court for a determination of "Circle M's liability to Clements." We did not remand for a redetermination of actual damages. The district court had no power on remand

to present the issue of actual damages to the second jury.

The effect of our prior mandate controls this issue. We need not consider the parties' further arguments including the doctrine of collateral estoppel, or the Texas one satisfaction rule. Our holding on this issue also disposes of Clements' argument that the award of actual damages in the first trial was inadequate as a matter of law, and negates any need to consider his argument that the evidence does not support the jury's finding that he was twenty percent negligent.

### III

■ Circle M asserts that the evidence presented at trial was insufficient to support the jury's finding that Circle M was grossly negligent and the award in favor of Clements of $100,000 in punitive damages. If an award of punitive damages was appropriate, Circle M argues in the alternative, that award should be reduced by the percentage of Clements' own negligence.

Under Texas law, the "mental attitude of the defendant" differentiates gross negligence from ordinary negligence and "justifies the penal nature of the imposition of exemplary damages." *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981). To recover punitive damages, "[t]he plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care." *Id.* On appeal of a jury finding of gross negligence, we look to all the surrounding facts and circumstances. The jury's finding will be upheld if the record contains some evidence to support it. *Id.* at 922 (citing *McPhearson v. Sullivan,* 463 S.W.2d 174, 175–76 (Tex.1971); *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex. 1970)). We must consider all evidence and inferences in a light most favorable to the verdict. *Id.* (quoting *Harbin,* 461 S.W.2d at 592) (additional citation omitted).

Clements claims that the record contains ample evidence to support the jury's finding that Circle M was grossly negligent. He notes testimony that Circle M failed to give its employees safety instructions and suggesting that Circle M had no formal safety program at the time of the accident. He also asserts that Circle M violated regulations of the Occupational Safety and Health Administration (OSHA) that require proper balancing of a load before it is lifted, prohibit the use of rods to form spreader bar attachments, and require an inspection of equipment before each use.

The responses of the jury to special interrogatories, however, preclude us from affirming the award of punitive damages on the basis of Clements' contentions. The jury specifically found that Circle M was not grossly negligent in "fail[ing] to provide reasonable safety instructions" or in "utiliz[ing] equipment without first inspecting for suitability and to ensure compliance with safety regulations." The jury found the evidence that Circle M did not give its employees safety instructions and that Circle M violated OSHA regulations regarding equipment make-up and inspection did not demonstrate gross negligence.

The two Circle M activities that the jury found rose to a level of gross negligence were Circle M's "fail[ure] to provide safe and/or suitable equipment with which to work" and "fail[ure] to supervise." The record, however, contains no evidence of a conscious indifference to Clements' safety on the part of Circle M necessary to support a finding of gross negligence on either of these grounds.

Circle M sent two employees to unload Steele's sucker rod bundles, a ginpole truck driver and a swamper. In the unloading process at issue, the swamper and Clements attached T-hooks on each end of a spreader bar to each end of a rod bundle. At the swamper's signal, the driver lifted the spreader bar and attached rod bundle by means of the ginpole truck's crane until the bundle was just clear of the bed of the trailer and other bundles on which it had rested. The ginpole truck driver then

pulled his truck forward, lowered the bundle, and backed his truck in order to place the bundle properly for storage. Clements and the swamper steadied the bundle with their hands as the driver lowered it.

The driver of the truck testified that Circle M did not send a supervisor to oversee this unloading operation. He also testified that he considered Clements the representative of Circle M's client on the job site and that he thought Clements "was running the show." He said he would have followed instructions from Clements. The swamper testified that two men usually work with a ginpole truck driver to unload sucker rod bundles, but that Circle M sent only himself and the ginpole truck driver to this job. He also testified that Steele told Circle M someone would meet them at the job site and perhaps help them. The driver testified that unloading sucker rod bundles is commonly a job for a driver and one swamper, as did the operations officer of Arrow Trucking Company, which specializes in hauling oilfield equipment.

The record contains, however, no evidence of a need, requirement, or professional practice of sending an additional person to supervise such unloading operations. Instead, the record is without contradiction that the driver had seventeen years of oilfield experience without any prior accidents, experience that included numerous unloadings of rod bundles with a ginpole truck and spreader bar. The swamper had never unloaded rod bundles before, but had worked in the oilfield for twelve years. Both the driver and the swamper testified that Clements appeared to know what he was doing during the unloading procedure.

The evidence of record indicates that Circle M sent experienced employees to unload Steele's rods and that with Clements' help, there was a sufficient number of workers to perform that job. The record contains no evidence to suggest that Circle M should have sent an additional supervisor. This record does not support an inference of knowing indifference to Clements' safety on the part of Circle M. This record will not support the finding of gross negligence on this ground.

The jury also found gross negligence on the basis of Circle M's "fail[ure] to provide safe and/or suitable equipment." All witnesses agreed that Circle M did not bring its own spreader bar to the unloading site, but that its employees used a bar that was already in the yard where they were unloading. No one testified, however, that this is an uncommon or improper practice. Clements adduced OSHA regulations to demonstrate that the make-up of the bar itself was unsafe and that Circle M failed to inspect the bar before using it. As we noted above, the jury specifically found that Circle M's violations of OSHA regulations did not amount to gross negligence. The record contains no evidence of the conscious indifference to safety that must be present to support a finding of gross negligence based on Circle M's "fail[ure] to provide safe and/or suitable equipment."

The trial judge erred in submitting the issue of gross negligence and punitive damages to the jury. We need not address Circle M's alternative contention that the award of punitive damages should have been reduced by the percentage of Clements' own negligence.

The judgment appealed from is

REVERSED, in part, and, in part, VACATED and REMANDED, with directions.