477 So.2d 600 (1985)
Terry Lynn CONLEY, Appellant,
v.
BOYLE DRUG Company, Etc., et al., Appellees.
Terry Lynn Conley, Appellant/Cross Appellee,
v.
BOYLE DRUG COMPANY, Etc., et al., Appellees/Cross Appellants.
No. 83-1559, 83-2091.
District Court of Appeal of Florida, Fourth District.
August 28, 1985.
Rehearing Denied November 18, 1985.
*601 Dianne J. Weaver of Weaver, Weaver & Lardin, P.A., and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for Terry Lynn Conley.
James E. Tribble and Diane H. Tutt of Blackwell Walker Gray Powers Flick & Hoehl, Miami, for appellees/cross appellants Boyle Drug Co. and Ortho Pharmaceutical Corp. and appellees E.R. Squibb & Sons, Inc. and Sandoz, Inc.
Robert F. Jordan of Conrad, Scherer & James, Fort Lauderdale, for appellee Rexall Drug Co.
Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, Orlando, for appellee Abbott Laboratories.
David J. Kadyk and Ted R. Manry, III, of MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellee Upjohn Co.
Hugh J. Turner, Jr. of Smathers & Thompson, Miami, and Russel H. Beatie, Jr., and Sanford N. Berland of Law Offices of Russel H. Beatie, Jr., New York City, for appellee Eli Lilly and Co.
Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for amicus curiae Academy of Florida Trial Lawyers.
Jack W. Shaw, Jr., of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for amicus curiae Florida Defense Lawyers Assn.
ANSTEAD, Judge.
The issue presented in this appeal is whether the appellant, Terry Lynn Conley, who was allegedly injured as a result of the ingestion by her mother of the drug diethylstilbestrol (DES), may state a cause of action against numerous DES manufacturers even though she is admittedly unable to identify the specific manufacturer of the drug her mother ingested.
Ms. Conley filed an action against eleven defendants who manufactured the drug DES in 1955-56 and prior thereto. The action alleges that in 1955-56, before Ms. Conley was born and while she was still in the fetal stage, her mother was given DES. Ms. Conley alleges that her mother was administered the drug in Broward County, Florida. Years later Ms. Conley, who is also a Florida resident, was diagnosed as suffering from cervical adenosis and underwent surgery for the removal of most of her cervix as well as other precancerous and cancerous lesions and tumors. She alleged that her cancer is linked to the ingestion of the DES by her mother and that the drug was defective by reason of the cancer-causing agent it contained and the danger that agent presented to unborn children. She also alleged that she was unable to identify the manufacturer of the DES ingested by her mother. The trial court granted various motions to dismiss and motions for judgment on the pleadings because Ms. Conley was admittedly unable to identify the specific manufacturer of the *602 drug her mother ingested. The only issue which Ms. Conley raises on appeal is whether she must allege the identity of the specific manufacturer of the drug in order to state a cause of action.
In an effort to state a cause of action Ms. Conley has suggested four theories of liability, none of which have yet been approved by the Florida Supreme Court.[1] Under traditional tort law long recognized in Florida, failure to allege legal causation by identifying the specific tortfeasors precludes recovery.[2] It is established law in Florida that district courts of appeal may advocate changes in the law and state their reasons for advocating change, but, nevertheless, they are bound to follow the case law set forth by the supreme court. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). We do so here. While this court sympathizes with Ms. Conley, we must conclude that we have no authority to approve a theory of liability which does not require her to pinpoint the specific defendant that caused her injury.
While we recognize that the status of tort law in Florida precludes us from approving a new theory of liability, we must also recognize Florida's constitutional mandate that for every wrong there is a remedy. Art. I, § 21, Fla. Const. This constitutional "guarantee" of a remedy is particularly compelling when the magnitude of the harm is great and the claimant is innocent of any conduct contributing to the injury. Here the consequences of the alleged drug defect are particularly devastating because the resulting cancer is life-threatening and the victim is not the direct consumer of the drug, but rather the consumer's off-spring. The circumstances are also unique in that the ill effects of the drug did not manifest themselves for years, thereby compounding the problem of identification of the particular manufacturer. Thus, in our view, if appellant's allegations are accepted as true, it is clear that traditional theories of tort law are inadequate to redress the appellant's injuries, primarily because of the requirement of identifying the specific wrongdoer. Someone has to pay. Is it to be the admittedly blameless child whose similarly innocent mother ingested the allegedly defective drug? Surely it is more appropriate that the producers of the drug, those who derive profit from its distribution, bear and share the risk of injury from its defects. Because of our concern for the apparent lack of a remedy for a grievous wrong, we would like to add our own observations to the debate as to whether the requirement for identifying the wrongdoer should be relaxed.

SINDELL
In Sindell v. Abbott Laboratories, 26 Cal.3d 588, 607 P.2d 924, 163 Cal. Rptr. 132, cert. denied, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980), the California Supreme Court specifically addressed the problem of stating a cause of action in a DES case similar to the one involved herein. The court rejected three of the four theories also suggested by the appellant here, but ultimately adopted a novel market share theory of liability. The court summarized the same four theories advanced by the appellant herein, in the following manner.

ALTERNATIVE LIABILITY
This theory has been codified in Restatement (Second) of Torts § 433(B)(3) which provides:

*603 Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.
This section is a codification of the ruling in Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948). There the plaintiff was injured when two hunters negligently shot in his direction. It could not be determined which of the hunters fired the shot which injured the plaintiff. Both defendants were held liable on the theory that both were negligent toward the plaintiff and the court shifted the burden to the defendants to absolve themselves. No Florida court as yet has accepted the alternative liability theory. In part this is due to the fact that the theory necessarily imposes liability upon defendants who are not in fact the cause of the plaintiff's injury simply because they may not be able to establish their blamelessness.

CONCERT OF ACTION
The elements of this doctrine are prescribed in Restatement of Torts § 876. The section provides:
For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he a) does a tortious act in concert with the other or pursuant to a common design with him, or b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself, or c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
Some courts have utilized this theory in DES cases with a certain modification of the theory. In Bichler v. Eli Lilly & Co., 79 A.D.2d 317, 436 N.Y.S.2d 625 (1981), the court allowed a limited expansion of the doctrine of concerted action because it found that there was evidence of "conscious parallel activity by the drug companies in seeking FDA approval of DES ... evidence from which may be inferred a tacit understanding."
One of the criticisms of the concert of action theory is that the formula for DES is a scientific constant. It is set forth in the U.S. Pharmacopoeia and manufacturers must utilize the formula. As the court stated in Sindell when analyzing and rejecting this theory:
What the complaint appears to charge is defendants' parallel or imitative conduct in that they relied upon each others' testing and promotion methods. But such conduct described a common practice in industry: a producer avails himself of the experience and methods of others making the same or similar products. Application of the concept of concert of action to this situation would expand the doctrine far beyond its intended scope and would render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant.
607 P.2d at 933, 163 Cal. Rptr. at 141. The federal district court also rejected this theory on the same grounds in Payton v. Abbott Laboratories, 512 F. Supp. 1031 (D.Mass. 1981).

ENTERPRISE LIABILITY
The Restatement (Second) of Torts § 433(B)(3) is the basis for the theory of enterprise liability. The concept derives from the decision of Hall v. E.I. DuPont de Nemours & Co., 345 F. Supp. 353 (E.D.N.Y. 1972). There the plaintiffs were 13 children who were injured by the faulty explosion of blasting caps in 12 separate incidents. The defendants were six blasting cap manufacturers who comprised most of the industry in the United States. The plaintiffs were unable to identify the particular manufacturer of the cap which caused the injuries. The court noted that the plaintiffs could proceed on two theories. First, they could show an explicit agreement or joint action among the defendants *604 (concert of action theory). Or they could show a tacit agreement by proof of the defendant's parallel behavior, or their adherence to industry-wide standards which showed joint control of the risk involved. The burden shifted to the defendants to disprove their liability. The court held that the plaintiff need not identify which of the defendants manufactured the particular blasting cap which injured the plaintiffs.
The district court held that the theory might apply if a plaintiff could prove: (1) that the product was manufactured by one of a small number of defendants in an industry; (2) the defendants had a joint capacity to reduce the risks of the product; and (3) each of them failed to take steps to reduce the risk at a substantially concurrent time by delegating their responsibility to an association. In the absence of any of these factors the court held it would be unreasonable to apply such a theory. The theory of enterprise liability postulated in Hall has been consistently rejected in other DES cases. See Morton v. Abbott Laboratories, 538 F. Supp. 593 (M.D.Fla. 1982); Sindell, 607 P.2d at 933; Namm v. Charles E. Frosst & Co., 178 N.J. Super. 19, 427 A.2d 1121 (1981); Ryan v. Eli Lilly & Co., 514 F. Supp. 1004 (D.S.C. 1981).

MARKET SHARE
This theory was adopted by the California Supreme Court in Sindell as an extension of its alternative liability doctrine. The Sindell court held that the plaintiff need only show that her condition was caused by the drug DES and that those companies joined as defendants produced a substantial share of the DES pills on the market when plaintiff's mother took the drug. Upon such a showing, each defendant would be held liable according to its share of the market unless it could prove that it did not manufacture the pills in question.[3]
The Sindell court recognized that normally the burden of proof that the tortious conduct of the defendant has caused harm to the plaintiff is upon the plaintiff. However, the California Supreme Court acknowledged that "traditional theories of causation may not be realistic in light of contemporary advances in sciences and technology... . The responses of the courts can be either to adhere rigidly to prior doctrine denying recovery to those injured by such products, or to fashion remedies to meet these changing needs." Sindell, 607 P.2d at 936, 163 Cal. Rptr. at 144. Since the Sindell decision was handed down courts throughout the nation have split in their reaction to the reasoning of the California Supreme Court. Some have accepted the market share theory, others have rejected it, while still others have approved a concept which modifies Sindell.[4]

COPELAND v. CELOTEX
The market share theory of liability has been approved by Florida's Third District *605 Court of Appeal. In Copeland v. Celotex Corp., 447 So.2d 908 (Fla. 3d DCA 1984), the plaintiff, whose occupation involved removing asbestos insulation, brought an action for products liability against numerous manufacturers of the product when he developed cancer. The Third DCA, recognizing the inherent difficulties of identifying the manufacturers of asbestos products, ruled that the complaint stated a cause of action under the market share theory of liability and that the plaintiff need only allege and prove that he was exposed to asbestos products in general and join a substantial number of asbestos manufacturers which marketed the product in the country during the time of the plaintiff's exposure. The facts of that case were unique in that it was the cumulative exposure to asbestos over the years which allegedly caused the plaintiff's injury. Also, the defendant manufacturers, as a group, supplied virtually all of the asbestos products to which the plaintiff had been exposed. These facts distinguish Copeland from the present case where a single manufacturer caused the plaintiff's injuries but that manufacturer may not have been joined as a defendant in the case.[5]

THE MARTIN CASE
A very recent decision which modifies Sindell is Martin v. Abbott Laboratories, 102 Wash.2d 581, 689 P.2d 368 (1984). The Washington Supreme Court rejected the Sindell market share theory of liability in this DES case because the Sindell court failed to define what constituted a "substantial" share of the relevant market and because the theory distorted the market liability by providing that the "substantial" market share bears joint responsibility for 100 percent of plaintiff's injuries. However, the Washington court adopted a modification of the Sindell theory and the alternate liability theory, calling it the "market-share alternate liability" theory. The court found support for such a modification in Restatement (Second) of Torts § 433(B)(3) comment h, at 446 (1964):
The cases thus far decided in which the rule stated in Subsection (3) has been applied all have been cases in which all of the actors involved have been joined as defendants. All of these cases have involved conduct simultaneous in time or substantially so, and all of them have involved conduct of substantially the same character, creating substantially the same risk of harm, on the part of each actor. It is possible that cases may arise in which some modification of the rule stated may be necessary because of complications arising from the fact that one of the actors involved is not or cannot be joined as a defendant, or because of the effect of lapse of time, or because of substantial differences in the character of the conduct of the actors or the risks which they have created. Since such cases have not arisen, and the situations which might arise are difficult to *606 forecast, no attempt is made to deal with such problems in this Section. The rule stated in Subsection (3) is not intended to preclude possible modification if such situations call for it.
The court reasoned that because all of the manufacturers marketed an inherently defective drug, they all contributed to the risk of injury to someone taking the drug. Thus, each defendant shares in some measure a degree of culpability even though they may not have actually caused the specific plaintiff's injury. The court held that the plaintiff need only allege: (1) that the plaintiff's mother took DES; (2) that DES caused the plaintiff's subsequent injuries; (3) that the defendant produced or marketed the type of DES taken by the plaintiff's mother (e.g., dosage, color, shape, markings, size or other identifiable characteristics); and (4) that the defendant's conduct in producing or marketing the DES constituted a breach of a legally recognized duty to the plaintiff. The plaintiff need not allege that the defendant produced the precise DES which was ingested.
Under Martin, individual defendants would be entitled to exculpate themselves from liability by establishing that they did not produce or market the DES in the geographic area; or that they did not distribute DES in the time period of the ingestion; in other words, they cannot be held liable, if they can prove that they were not responsible for the particular injury. The defendants that are unable to exculpate themselves from potential liability are deemed members of the market. Market is defined by the specificity of the evidence as to geographic market area, time of ingestion, and type of DES. These defendants are initially presumed to have equal shares of the market and are liable only for the percentage of the plaintiff's judgment that represents their share of the market. Defendants can rebut this presumption and reduce their liability by establishing their actual share in the DES market. In this way the court seeks to avoid "distortion" of liability. Defendants may also implead third party defendants in order to reduce their presumptive share.

PROPOSED MARKET SHARE THEORY
We find this theory of liability as adopted in Martin compelling, and urge its serious consideration, with some alterations, by the Florida Supreme Court. Such a theory is substantially predicated on the same rationale underlying the basic theory of strict liability long accepted in Florida: that manufacturers are better able than consumers to discover harmful defects and prevent future injury; that manufacturers, who benefit from the distribution of the substance, are better able to spread the costs associated with such distribution; and that, as between an innocent consumer or victim of the defective product and the manufacturer thereof, the manufacturer should bear the cost of injury. Recognizing such a theory would give meaning to our Constitution's promise of a remedy for every wrong. We urge the adoption of such a theory because we believe it would prevent injured parties from being denied relief because of the particular difficulty of tracing a product to a specific manufacturer. In the hopes of adding something to the debate, we also offer our own views of what a workable theory of liability might include.
Like the Washington court in Martin, we agree that one of the major problems with the market share theory of liability is that it fails to delineate the relevant "market," both in terms of geography and time. Is it the locale where the drug was purchased, or the entire area in the nation or world where DES is distributed? Similarly, does it include the entire amount of DES placed on the market before the incident in question or is it limited to the amount distributed the same day or the week, month or year before? Ideally, perhaps, if the allegations are correct that all DES is defective, it would be appropriate to make producers liable in proportion to their share of the market since that share would be proportionate to the share of risk of injury created. Hence, if all injuries from DES *607 could be detected and all producers identified, it would seem appropriate to make the producers liable in proportion to the risk created, i.e. the percentage of DES marketed. As a practical and legal matter, however, this is impossible. In reality, as this case demonstrates, a solution must be found as claims are presented.
Because we are seeking to protect persons in Florida, or their children, we would define the market as being the entire state of Florida. Any manufacturer that produced or marketed the allegedly defective drug in Florida, should be held responsible for the plaintiff's damages because it contributed to the risk of injury by making the pool of defective drugs available, even though it may not have caused the actual injury of a given plaintiff.[6] However, such defendants should not be responsible for the plaintiff's damages if that manufacturer can establish that it did not manufacture the actual drug ingested. In other words, once it is established that the manufacturer distributed DES in Florida the burden of proof would be shifted to the defendant to establish that, in fact, it did not cause the plaintiff's injuries. In this way the claimant has a remedy but the manufacturer may still exonerate itself under the traditional concept that it did not cause the particular injury.
In our view, however, unlike the Martin view, a manufacturer that is proven to be responsible for some percentage of the Florida market, but who could not exonerate itself, should be held jointly and severally liable to the plaintiff for all of the plaintiff's damages, rather than just a share of the damages based on its market share. However, such a manufacturer would be entitled to contribution from other manufacturers who distributed DES in Florida and were similarly unable to affirmatively establish that they did not produce or distribute the drug which the plaintiff's mother ingested. To further define the relevant time frame and market, we believe that contribution should be based on the proportionate share of the Florida market which each manufacturer enjoyed from the earliest time DES was marketed in the area until the latest date of ingestion (March 27, 1956).[7] We recognize that the market concept may be as difficult to determine as a matter of proof as the issue of identity of the specific manufacturer. However, we have attempted to give as much shape and content to the cause of action and the applicable defenses in order to aid the trial of such an action, recognizing at the same time that we are severely handicapped, dealing as we are with the bare allegations of a complaint rather than facts fully developed at a trial.
Under this proposed theory of liability the plaintiff would retain the traditional burden of proving the inherent defectiveness and dangerousness of DES, regardless of which manufacturer produced it, and that DES ultimately caused the plaintiff's injuries. In addition, we would require the plaintiff to prove that, because of the manufacturing and marketing practices involved, and the delayed harmful effect on the non-consuming victim, that it is not reasonably possible to identify the manufacturer of the specific DES ingested by her mother.
As we indicated at the beginning of this opinion, the courts of appeal are bound to follow the case law set forth by the Florida Supreme Court and we have no authority to approve a new theory of liability.[8] It is only within our power to state our reasons for advocating change and to certify this question to the Supreme Court for consideration as an issue of great public concern:
DOES FLORIDA RECOGNIZE A CAUSE OF ACTION AGAINST A DEFENDANT FOR MARKETING DEFECTIVE DES WHEN THE PLAINTIFF *608 ADMITTEDLY CANNOT ESTABLISH THAT A PARTICULAR DEFENDANT WAS RESPONSIBLE FOR THE INJURY?
DELL, J., and GEIGER, DWIGHT L., Associate Judge, concur.
NOTES
[1] The four theories discussed herein are alternative liability, concert of action, enterprise or industry-wide liability, and market share liability. Also see note 5 for relevant Florida Supreme Court decision.
[2] A similar issue concerning a DES case was presented to the federal district court in Morton v. Abbott Laboratories, 538 F. Supp. 593 (M.D. Fla. 1982). There the plaintiff was also unable to identify the particular manufacturer of DES which caused her injuries. The plaintiff argued on appeal that the court should adopt one of the same four theories that Ms. Conley has suggested to this court. In rejecting these theories and construing Florida law the federal court stated that "These cases certainly show that Florida takes a realistic view of the problems of proof facing product liability plaintiffs. They do not indicate, however, that Florida courts are inclined to remedy such problems by abandoning fundamental principles of product liability law." 538 F. Supp. at 599.
[3] As indicated above this is the only one of the four theories which has actually been adopted in Florida and the facts of that case distinguish it from the case at bar. See Copeland v. Celotex Corp., 447 So.2d 908 (Fla. 3d DCA 1984). This decision is currently on appeal to the Florida Supreme Court. Also see Copeland v. Armstrong Cork Co., 447 So.2d 922 (Fla. 3d DCA 1984).
[4] In Ferrigno v. Eli Lilly & Co., 175 N.J. Super. 551, 420 A.2d 1305 (Law Div. 1980), the New Jersey court adopted the market share theory. However, in Namm v. Charles E. Frosst & Co., 178 N.J. Super. 19, 427 A.2d 1121 (1981), the court rejected the market share theory. Although the court did indicate that on an adequate record it might recognize some relaxation of the traditional identification requirement so as to allow recovery against a defendant of that portion of a plaintiff's damages which is represented by that defendant's contribution of DES to the relevant market. In Hardy v. Johns-Manville Sales, 509 F. Supp. 1353 (E.D.Texas 1981), rev. on other grounds, 681 F.2d 334 (5th Cir.1982), the court accepted the market share theory of liability, in an asbestos case, on a preliminary basis in order to allow discovery. South Dakota recognized the market share theory in McElhaney v. Eli Lilly & Co., 564 F. Supp. 265 (D.S.D. 1983).

Other courts have criticized the Sindell decision and the market share theory. In Morton v. Abbott Laboratories, 538 F. Supp. 593 (M.D.Fla. 1982), the federal district court, interpreting Florida law, strongly criticized the Sindell market share theory of liability as a radical departure from the traditional concepts of causation. In Ryan v. Eli Lilly & Co., 514 F. Supp. 1004 (D.S.C. 1981), the federal district court in South Carolina rejected the action of the Sindell court, stating, "the remarkable new burden-shifting theory ... is not now the law of either North Carolina or South Carolina."
In Mizell v. Eli Lilly & Co., 526 F. Supp. 589 (D.S.C. 1981), where DES pills were purchased in California, the South Carolina District Court refused to follow Sindell because the theory was so antithetical to South Carolina public policy. The court would not apply California law even though the injury occurred in that state.
In Tidler v. Eli Lilly, 95 FRD 332 (D.D.C. 1982), the court held that under Maryland and District of Columbia law manufacturers are not insurers of products.
[5] Since this opinion was drafted the Florida Supreme Court has rejected the Third District's holding:

While we recognize the clearly established majority view on this issue as expressed in the above holdings, we do not find it necessary to accept or reject the market theory approach; rather, we find that, since Copeland has identified several of the named defendants as having manufactured the products that caused his injury, this case neither requires nor justifies the major policy change necessary to adopt the market share theory in Florida.
Celotex v. Copeland, 471 So.2d 533 (Fla. 1985). The opinion left open the issue of whether the court would approve the use of the market share theory in a DES case.
[6] Conversely, if the drug was ingested by a mother in another state then that state would comprise the relevant market area.
[7] Several of the parties point out that the FDA originally approved DES in 1941, and later approved it for pregnancy-related problems in 1947.
[8] Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).