Clifford RAY and Louise Ray, individually and as the natural guardians of their minor child, Randy Ray, et al., Plaintiffs,

v.

CUTTER LABORATORIES, DIVISION OF MILES, INC., and Armour Pharmaceutical Co., Defendants.

Nos. 88–693–CIV–T–17(A), 88–694–CIV–T–17 and 88–695–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

Sept. 7, 1990.

Judith S. Kavanaugh, Peeples, Earl & Blank, Robert L. Parks, Anderson, Moss, Parks & Russo, Elizabeth Koebel Russo, Elizabeth Russo, P.A., Miami, Fla., for plaintiffs.

Duncan Barr, Christopher Bayuk, O'Connor, Cohn, Dillon & Barr, San Francisco, Cal., Thomas M. Burke, Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, Fla., for Armour Pharmaceutical Co.

Patricia E. Lowry, Steel, Hector Davis Burns & Middleton, West Palm Beach, Fla., for Cutter Laboratories.

Robert F. Nunez, Nunez & Deakyne, St. Petersburg, Fla., Mediator.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' motions for summary judgment and Plaintiffs' response thereto.

Plaintiffs claim that Ricky, Randy, and Robert Ray were infected by the Acquired Immune Deficiency Syndrome (AIDS) virus as a result of their use of plasma products manufactured by Defendants. Plaintiffs have raised claims of negligent manufacture, negligent failure to warn, and breach

of implied warranty pursuant to Florida Statutes, Section 672.316(5). Additionally, Plaintiffs also claim that Defendants are liable under theories of concert of action, alternative liability, enterprise liability, and market share liability.

Defendants argue that Plaintiffs' admitted inability to specifically identify which of the Defendants manufactured the plasma product that infected the Ray boys with the AIDS virus precludes them from recovering under any negligence-based cause of action. Defendants additionally argue that Florida has not adopted the four theories of liability on which Plaintiffs rely to establish a cause of action without identifying a specific tortfeasor.

Ricky, Randy, and Robert Ray all suffer from hemophilia, a hereditary bleeding disorder which is caused by the absence of normal clotting factors in the blood. The clotting factor which is absent from or deficient in a hemophiliac's plasma is known as Factor VIII.

Several companies, including Defendants, manufacture a concentrate of Factor VIII by pooling plasma from thousands of blood donors. Cutter's product is marketed and sold under the name Koate, while Armour's product is marketed and sold under the name Factorate.

From 1981 continuing to the present, the Ray boys have been prescribed to and have used Factor VIII. Koate and Factorate have been *among* the Factor VIII products used by the Ray boys throughout this period. Randy, Ricky, and Robert Ray have undergone blood tests which indicate that all have been exposed to the HIV virus which is known to cause Acquired Immune Deficiency Syndrome or "AIDS."

The first reported cases of the disease which later came to be known as AIDS were reported in the United States in 1981. At that time homosexual males, intravenous drug users, and Haitians were identified as apparently susceptible to the syndrome. The first cases of a syndrome-related disease in hemophiliacs were reported in 1982. During that same year, blood products were identified as a possible mode of transmission of AIDS. In January, 1983, the American Red Cross, the American Association of Blood Banks and the Council of Community Blood Centers issued a statement that acknowledged the theory that AIDS might be transmissible by blood. However, the statement also noted that the theory remained unproven.

The AIDS virus was identified in 1984 and at this time the medical community reached a consensus that the virus was transmissible through blood. The ELISA test, which detects AIDS antibodies in the blood, was licensed by the Food and Drug Administration (FDA) in 1985. (For a thorough historical discussion of the discovery and identification of the AIDS virus, *see Kozup v. Georgetown University*, 663 F.Supp. 1048 (D.C.C.1987), *aff'd in part*, 851 F.2d 437 (D.C.Cir.1988).)

Both Cutter and Armour began screening potential blood donors for AIDS symptoms in 1983. In 1984, both companies began inserting a warning into its Factor VIII product advising that AIDS might be transmissible by blood or blood components. ELISA testing was implemented by both Cutter and Armour shortly after the test was licensed and approved for use by the FDA in 1985.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for dis-

covery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274. The Court is satisfied that no factual dispute remains which precludes summary judgment.

## I. PLAINTIFFS HAVE FAILED TO DEMONSTRATE PROXIMATE CAUSE

■ Counts I, II, IV, and V of Plaintiffs' Third Amended Complaint allege that Defendants are liable for negligent manufacture and negligent failure to warn. These two theories of liability are grounded in traditional negligence doctrine. To prove a cause of action in negligence, the plaintiff must show that

1. the defendant owed the plaintiff a duty;
2. the defendant breached that duty; and
3. the plaintiff suffered damages proximately caused by that breach. *Cato v. West Florida Hospital, Inc.*, 471 So.2d 598, 600 (Fla. 1st DCA 1985).

If even one of the elements is missing, the entire cause of action must fail. *Cato*, 471 So.2d at 600.

Plaintiffs advance compelling arguments as to the first two elements. However, Plaintiffs ultimately cannot prevail on the third element due to their inability to identify *which* of the Defendants manufactured the plasma that caused the Ray boys to contract the AIDS virus.

In *Morton v. Abbott Laboratories*, 538 F.Supp. 593 (M.D.Fla.1982), a product liability action was brought against eight manufacturers of the drug diethylstilbestrol (DES). The plaintiff alleged that she was injured as a result of her mother's use of DES while plaintiff was in utero. The court considered whether the defendants could be held liable without proof that any of them manufactured the pills that caused plaintiff's injury. According to the court:

Plaintiff in a product liability action must ordinarily prove that a manufacturer defendant produced the product that allegedly caused the injury. *Morton*, 538 F.Supp. at 595 *citing* Restatement (Second) of Torts §§ 402A, 433B (1965) and; W. Prosser, *The Law of Torts* § 98 (1971).

Similarly, in *Conley v. Boyle Drug Co.*, 477 So.2d 600 (Fla. 4th DCA 1985), another DES case, the district court refused to allow recovery where the plaintiff was unable to identify the specific defendant that caused her injury. The court stated that Florida has long recognized traditional tort law under which "failure to allege legal causation by identifying the specific tortfeasors precludes recovery." *Conley*, 477 So.2d at 602.

Plaintiffs have expressly admitted that they "are unable to specifically identify which of the defendants manufactured the contaminated plasma product which infected (Ricky, Randy, and Robert Ray) with the condition known as AIDS." Third Amended Complaint for Damages, allegations nos. 39, 47, 53, 63. As a result, the Court finds that Plaintiffs are unable to prove the proximate cause requisite to establishing a cause of action in negligence.

In Counts III and VI of Plaintiffs' Third Amended Complaint, Plaintiffs allege a claim under Florida Statutes Section 672.316(5). Known as the "blood shield" statute, it provides:

(T)he procurement, distribution, etc., of blood or blood products is declared the rendering of a service and does not constitute a sale . . . and the implied warranties of merchantability and fitness for a particular purpose are not applicable as to a defect that cannot be detected or removed by a reasonable use of scientific procedures or techniques. 672.316(5) Fla.Stat. (1981).

Plaintiffs contend that, from 1978 on, the process of heat treatment was available to remove the defect from Defendants' blood products. According to Plaintiffs, the availability of a removal process subjects Defendants to liability for breach of the implied warranties of merchantability and fitness under the Blood Shield statute.

The statute has been termed a hybrid because its effect is to take the doctrine of implied warranties of merchantability or fitness, which are traditionally applied only to the sale of a product, and make them additionally applicable to the rendering of a service. *Williamson v. Memorial Hospital of Bay County,* 307 So.2d 199 (Fla. 1st DCA 1975). As a result, the statute "establishes a criteria for recovery which is ordinarily understood by lawyers and judges to be cognizable in negligence." *Williamson,* 307 So.2d at 201. Thus, a plaintiff must allege and prove that the defect of which he complains is detectable or removable by the use of reasonable scientific procedures or techniques that as the direct and proximate result of defendant's failure to detect or remove the defect, the plaintiff suffered an injury.

As discussed above, Plaintiffs are unable to specifically identify which Defendant manufactured the plasma product that infected the Ray boys. Since Plaintiffs cannot prove an injury proximately caused by Defendants' alleged failure to detect or remove the AIDS virus from the plasma products, a cause of action under Florida Statutes, Section 672.316(5) cannot be sustained.

## II. FLORIDA HAS NOT ADOPTED TORT THEORIES WHICH ALLOW RECOVERY WITHOUT IDENTIFICATION OF A WRONGDOER

In addition to their traditional tort claims, Plaintiffs have alleged four other theories of liability—concert of action, alternative liability, enterprise liability and market share liability. Plaintiffs contend that these theories allow them to state a cause of action despite their inability to identify a specific tortfeasor.

Count VII of Plaintiffs' Third Amended Complaint seeks to hold Defendants liable for concert of action. Plaintiffs allege that Defendants assisted and encouraged one another to inadequately test and process their plasma products and to provide insufficient warnings of the risk of AIDS infection.

■ The concert of action doctrine has long been recognized in Florida. *Symmes v. Prairie Pebble Phosphate Co.,* 66 Fla. 27, 63 So. 1 (1913); *Standard Phosphate Co. v. Lunn,* 66 Fla. 220, 63 So. 429 (1913). It has been explained by Dean Prosser as follows:

> All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him. W. Prosser, *The Law of Torts,* § 98 (1971).

The implication is that a specific wrongdoer can be identified. Those that aid, encourage or otherwise further the tortious conduct by express or tacit agreement are jointly and severally liable with the wrongdoer for causing the plaintiff's injury. However, proof of causation is still required. *Morton,* 538 F.Supp. at 595. Plaintiffs' inability to make this proof renders concert of action and the three other theories of liability inapplicable.

■ The Florida Supreme Court has never approved any of Plaintiffs' four alternative theories of liability in cases where the plaintiff has been unable to identify the specific tortfeasor. *Conley,* 477 So.2d at 602; *Wood v. Eli Lilly Co.,* 723 F.Supp. 1456 (S.D.Fla.1989). Recognizing this, in *Conley,* Florida's Fourth District Court of Appeal certified the following question to the Florida Supreme Court as being of great public importance:

> DOES FLORIDA RECOGNIZE A CAUSE OF ACTION AGAINST A DEFENDANT FOR MARKETING DEFECTIVE DES WHEN THE PLAINTIFF ADMITTED HE CANNOT ESTABLISH THAT A PARTICULAR DEFENDANT

WAS RESPONSIBLE FOR THE INJURY?

The Court's decision may provide guidance for determining the future viability of claims brought by individuals in circumstances similar to that of the Ray family. Unfortunately, the Florida Supreme Court has not yet rendered a decision, though arguments in *Conley* were heard in October, 1986. Given the law as it exists in Florida today, this Court is bound to grant summary judgment to Defendants on Counts VII, VIII, IX, and X of Plaintiffs' Third Amended Complaint.

This Court is aware that Plaintiffs' inability to identify which Defendant manufactured the plasma product that infected the Ray boys with AIDS, coupled with the Florida Supreme Court's delayed response to the question certified in *Conley*, has left Plaintiffs without a remedy. This is particularly disturbing given Florida's constitutional mandate that for every wrong there must be a redress. Fla. Const. art. I, § 21.

Additionally, the Court realizes that the ordeal of the Ray boys and their family has generated significant media attention and an outpouring of public sympathy. However, this Court's sympathy for Plaintiffs' plight cannot override its duty to follow and apply existing law. As the United States Supreme Court has eloquently stated:

> A federal court in an diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits. *Day and Zimmermann Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975), 423 U.S. 3, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975); *see also Tidler v. Eli Lilly and Co.*, 851 F.2d 418, 424 (D.C.Cir.1988).

The Court is therefore bound to grant summary judgment to Defendants. Accordingly, it is

ORDERED that Defendants' motions for summary judgment are granted, and the Clerk is directed to enter a final judgment of dismissal for Defendants in these three consolidated cases.

DONE and ORDERED.